CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 2 0 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| BETTY ANN JOHNS, ET AL., | CIVIL ACTION NO. 3:07-CV-00063 |
| *Plaintiffs,* |  |
| v. | MEMORANDUM OPINION |
| EUGENE M. STILLWELL, JR., ET AL., |  |
| *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiffs Betty Ann and Tyrone Johns (the "Johns"), an African-American married couple, filed this action on November 28, 2007, raising claims under state law and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA" or the "Act"), alleging racially discriminatory acts committed by Defendant Eugene M. Stillwell, Jr. ("Stillwell") during the six-year period of the Johns' tenancy in a house owned by Stillwell.[1, 2]  On July 18, 2008, the Court denied Stillwell's motion to dismiss.  The matter is now before the Court upon consideration of Stillwell's motion for summary judgment, which has been fully briefed and argued before the Court at a hearing on May 11, 2009.[3]  A jury trial is scheduled for May 26-29, 2009.  For the

---

[1] By Order entered on May 18, 2009, the Court granted Plaintiffs' motion to voluntarily dismiss two other named defendants, Jimmy Meninger and Billy Smithwick.

[2] Plaintiffs' tenancy terminated in mid-June 2005. The FHA permits an aggrieved person to file suit no later than two years after "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).  The Act also contains a tolling provision that applies any time an aggrieved person files an administrative complaint with the Department of Housing and Urban Development ("HUD"). 42 U.S.C. § 3613(a)(1)(B). It appears that Plaintiffs filed an administrative complaint with HUD on June 9, 2006, and that they withdrew the administrative complaint on March 28, 2008, several months after the instant lawsuit was filed. Accordingly, it appears that the FHA claims in the complaint are timely filed.  Moreover, Defendant does not raise any statute of limitations as a defense.

[3] On May 7, 2009, the Court granted Plaintiffs' motion for partial summary judgment regarding Stillwell's counterclaims.  Plaintiffs' motion was unopposed, and the dismissal has no bearing on the merits of Plaintiffs'
(continued...)

reasons stated herein, Defendant's motion for summary judgment will be DENIED, in part, and GRANTED, in part. Defendant's motion will be granted as to Plaintiffs' claims under 42 U.S.C. §§ 3604(a) & 3604(c), and will be denied as to Plaintiffs' claims under 42 U.S.C. §§ 3604(b) and 3617; additionally, Defendant's motion will be denied as to Plaintiffs' state law claims.

## I. FACUTAL ALLEGATIONS AS STATED IN THE COMPLAINT[4]

In 1997, the Johns rented a trailer near Gordonsville in Louisa County, Virginia. The trailer was owned by Stillwell. The Johns did not rent the trailer from Stillwell directly, but instead dealt with a local real estate agent, Barbara Potter Drinkwater. In February 1999, Stillwell offered the Johns another rental property, a house located at 2767 Lindsay Road in Louisa County. Drinkwater dealt with the Johns and made the necessary arrangements. The Johns agreed to rent the house for $900.00 per month; they "decided to rent the house because the house was large and had a nice yard." The Johns moved into the house on or about February 15, 1999. That same day, Stillwell visited the house and met the Johns for the first time. Upon meeting Mrs. Johns, Stillwell made clear that he had not been aware that the Johns were African-American and that he was uncomfortable with that fact.

After that encounter, Stillwell and his relatives began a campaign of harassment and intimidation towards the Johns because of their race. Stillwell imposed onerous requirements on their tenancy, such as the following: informing the Johns that they could not have friends or family visit the house, that they could not congregate as a family, and that they could not put any articles in front of the house. Stillwell repeatedly called the Johns to inquire who was living

---

[3](...continued)
complaint or any defense raised thereto.

[4] The factual allegations presented generally reiterate the factual summary found in the Memorandum Opinion of July 18, 2008, denying Stillwell's motion to dismiss.

-2-

there and reminded them that they could not have guests. He also advised repeatedly that he could come at any time to verify their compliance with these rules and informed the Johns that the property was being watched by neighbors.

Neighbors of the Johns, relatives of Stillwell, and Stillwell regularly used racial epithets, swear words, and other derogatory terms when referring to the Johns. For example, Stillwell's relatives confronted Mrs. Johns with hateful and racist language as she was moving into the house. Later, a neighbor related to Stillwell called Mrs. Johns a "[nigger]" and told her, in effect, that "they were not going to let the Johns live in that house in peace for as long as they lived there." Another relative told the Johns, "you [niggers] shouldn't be in his grandmother's house." Additionally, Stillwell referred to a 20-year-old male member of the family as a "boy."

The Johns' neighbors and Stillwell's relatives also trespassed in the Johns' yard and fired weapons near the house. Mrs. Johns repeatedly asked the trespassers to stay off of the property, but they refused, using racially offensive language and epithets. The Johns informed Stillwell about his relatives' and neighbors' harassment, trespassing, and use of firearms near the house, and asked him to inform his relatives and neighbors that they were not allowed on the property. Stillwell refused and stated that his relatives and neighbors could do as they pleased on the property.

In March 2005, Stillwell informed the Johns that he had decided to raise the rent to $1500.00 per month. The Johns attempted to negotiate a lower rent, but decided to move after they were unsuccessful. The Johns and Stillwell subsequently agreed that their tenancy would terminate at the end of June 2005. However, on June 9, 2005, the Johns left the house for the weekend to attend a funeral in Pennsylvania. While the Johns were gone, Stillwell entered the house and, with the help of his neighbors and relatives, including neighbors Jimmy Meninger

and Billy Smithwick, removed the Johns' belongings and dumped them in front of the house. Stillwell, Meninger, and Smithwick claimed some of the items for themselves and permitted others to take whatever they wanted from the Johns' possessions. Stillwell, Meninger, Smithwick, and others then set fire to the Johns' possessions and watched them burn.

The Johns returned to find their possessions destroyed and strewn across the front of the yard. The Johns called the local police to report the removal and destruction of their property and then left the house, unable to recover their possessions. The Johns lost almost all of their possessions, including Mr. Johns' medicine, clothes, appliances, furniture, important documents such as birth certificates and financial records, and items of sentimental value. Stillwell subsequently rented the Gordonsville house to white people.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250. The mere existence of a scintilla of evidence or of unsubstantiated conclusory allegations is insufficient to avoid

-4-

summary judgment. *Id.* at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

-5-

### III. Discussion

The Fair Housing Act prohibits, *inter alia*, the discrimination against any person in the terms, conditions, or privileges of rental of a dwelling because of race or handicap. 42 U.S.C. §§ 3604(b) and 3604(f). In general, plaintiffs may establish a *prima facie* case of discrimination under the Fair Housing Act by showing either (a) that the act or practice complained of was motivated by a discriminatory purpose, or (b) that it has a discriminatory impact. *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 986 (4th Cir. 1984). Defendants may overcome a *prima facie* showing of discriminatory intent by establishing a "legitimate non-discriminatory reason for the challenged practice." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Betsey*, 736 F.2d at 988. The *McDonnell Douglas* framework is irrelevant if a plaintiff presents sufficient direct evidence of discriminatory intent. *Pinchback v. Armistead Homes*, 907 F.2d 1447, 1452-53 (4th Cir. 1990) (citing *U.S. Postal Service Board v. Aikens*, 460 U.S. 711 (1983) & *Trans World Airlines v. Thurston*, 469 U.S. 111 (1985)). The three steps of the *McDonnell Douglas* test are as follows: (1) a plaintiff must first prove a *prima facie* case of discrimination by a preponderance of the evidence; (2) a defendants then has the opportunity to present a legitimate, non-discriminatory reason for the action; (3) if defendants present a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff, who must proffer evidence that the legitimate non-discriminatory reason proffered was merely a pretext for discrimination. *Id.* To succeed, a plaintiff must adduce sufficient evidence both that the reason was false, and that discrimination was the real reason. *Vaughan v. Metrahealth Companies*, 145 F.3d 197 (4th Cir.1998) (quoting *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 201 (4th Cir.1997)); *see also Hadeed v. Abraham*, 103 Fed. Appx. 706 (4th Cir. 2004); *Williams v. 5300 Columbia Pike Corp.*, 891 F.Supp. 1169, 1181 (E.D. Va. 1995). Before the *McDonnell Douglas* test is applied,

Case 3:07-cv-00063-NKM-BWC   Document 75   Filed 05/20/09   Page 6 of 25   Pageid#: 1446

however, a plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence.

The Johns allege that Defendant violated the Fair Housing Act, 42 U.S.C. § 3604(a), (b), and (c), and 42 U.S.C. § 3617, by (1) making the house unavailable on the basis of race or color; (2) providing different terms, conditions, and privileges of rental on the basis of race and/or color; (3) making or causing to be made statements with respect to the rental of the house that indicated a preference, limitation, or discrimination based on race and/or color, or an intention to make such preference, limitation, or discrimination; and (4) by coercing, intimidating, threatening, or interfering with the Johns' exercise or enjoyment of their rights granted or protected by the Fair Housing Act. The Johns also claim that, under state law, Defendant committed a hate crime by subjecting them to acts of vandalism against their property because of racial animosity and that Stillwell breached his contractual obligation to rent the house to them until the end of June 2005.

Defendant states that no genuine issue exists as to the material facts that (1) he was not motivated by racial animus as alleged; (2) no agent-principal relationship existed between Defendant and any person who may have exhibited racial animus; and (3) Defendant disclosed and executed a legitimate nondiscriminatory basis for the termination of the Plaintiffs' lease. According to Defendant, Plaintiffs' Fair Housing claims fail because Plaintiffs cannot generate a genuine dispute that he had discriminatory intent. Defendant does not address Plaintiffs' state law claims, other than asserting that Plaintiffs' state law claims should be dismissed because the claims are "so entangled with the federal claim that rejection of [the] latter should entail rejection of [the] former as well." (Citation omitted.) Referring to 28 U.S.C. § 1367, Defendant

Case 3:07-cv-00063-NKM-BWC   Document 75   Filed 05/20/09   Page 7 of 25   Pageid#: 1447

points out that this Court may dismiss the state law claims once it has dismissed all claims over which it has original jurisdiction.

Plaintiffs have filed a response to Defendant's motion, Defendant has filed a reply, and Plaintiffs have filed a surreply. These filings are supplemented with extensive exhibits, mostly excerpted deposition testimony; additionally, Defendant and Plaintiffs have supplemented these filings with exhibits filed in support of various objections, post-hearing supplements, and notices. The record before the Court is fairly voluminous. Given the volume of the record, the Court will address the relevant arguments and evidence submitted in support thereof in reference to the four specific sections of the FHA that Plaintiffs have invoked.

### A. 42 U.S.C. § 3604(a)

Under Section 3604(a), it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." In short, § 3604(a) prohibits pre-rental or pre-sale "housing refusal," *i.e.*, housing discrimination in the incipient stages of a real estate transaction. *Soules v. U.S. Dept. of Housing and Urban Development*, 967 F.2d 817, 822 (2d Cir. 1992); *see also Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n* ("*Halprin II*"), 388 F.3d 327, 329-30 (7th Cir. 2004) (alleged harassment did not violate § 3604 because provisions barring discrimination in the sale or rental of a dwelling address the problem of "exclusion," not "expulsion").[5] To make out a

---

[5] In *Halprin II*, finding that "the plaintiffs have no claim under section 3604," the Court of Appeals reasoned that

> [t]he Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing. . . . Behind the Act lay the widespread practice of refusing to sell or rent homes in desirable residential areas to members of minority groups. Since the focus was on their exclusion, the problem of how they were when they were included, that
>
> (continued...)

*prima facie* case of housing refusal under 42 U.S.C. § 3604(a), a plaintiff must show the following: (1) the plaintiff is a member of one of the statutorily protected classes; (2) the plaintiff sought and was qualified to rent or purchase housing; (3) the plaintiff was rejected; and (4) the property remained available to other renters or purchasers. *See Frison v. Ryan Homes*, 2004 WL 3327904, at *5 (D. Md. Oct. 29, 2004); *Mobley v. Rosselle*, 297 F. Supp. 2d 835, 838 (D. Md. 2003); *Pinchback*, 907 F.2d at 1452.[6]

Plaintiffs contend that Stillwell violated Section 3604(a) of the Act by denying them housing and making housing unavailable on the basis of race, when he removed the Johns' possessions from their home in their absence, asserted they had no right to enter the property,

---

[5](...continued)

is, when they were allowed to own or rent homes in such areas, was not at the forefront of congressional thinking. *That* problem -- the problem not of exclusion but of expulsion -- would become acute only when the law forced unwanted associations that might provoke efforts at harassment, and so it would tend not to arise until the Act was enacted and enforced. There is nothing to suggest that Congress was trying to solve that future problem, an endeavor that would have required careful drafting in order to make sure that quarrels between neighbors did not become a routine basis for federal litigation.

388 F.3d at 329-30.

[6] To the extent that § 3604 includes language making it unlawful to "otherwise make unavailable or deny[] a dwelling to any person because of race," it has been held that the text of the statute does not reach "every practice having the effect of making housing more difficult to obtain," *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 192 (4th Cir. 1999), and that § 3604 does not reach every event "that might conceivably affect the availability of housing," *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 423 (4th Cir. 1984). Courts have considered claims under § 3604(a) in cases of, for example, racial steering by real estate agents and discriminatory rental policies. *Jersey Heights, id.* (citing *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990); *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983 (4th Cir. 1984)). My review of precedent indicates that § 3604(a) prohibits pre-rental or pre-sale "housing refusal," *i.e.*, housing discrimination in the incipient stages of a real estate transaction. Regarding the treatment of § 3604(a) in other circuits, *see also* n. 5, *supra*, regarding *Halprin II*, 388 F.3d at 329-30 (alleged harassment did not violate § 3604 because provisions barring discrimination in the sale or rental of a dwelling addressed the problem of "exclusion," not "expulsion"); *Mitchell v. Shane*, 350 F.3d 39, 48 (2d Cir. 2003); *Mealey v. Apartment Rentals*, 125 F.3d 844 (2d Cir. 1997); *Cabrera v. Jakabovitz*, 24 F.3d 372, 381 (2d Cir. 1994); *Soules v. U.S. Dept. of Housing and Urban Development*, 967 F.2d 817, 822 (2d Cir. 1992); *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir. 1979); *Koorn v. Lacey Tp.*, 78 Fed. Appx. 199, 207 (3d Cir. 2003); *Patterson v. Guttman*, 225 F.3d 659 (Table) (6th Cir. 2000); *Selden Apartments v. U.S. Dept. of Housing and Urban Development*, 785 F.2d 152, 159 (6th Cir. 1986); *Secretary, HUD on Behalf of Herron v. Blackwell*, 908 F.2d 864, 871 (11th Cir. 1990).

labeled them trespassers, and burned their belongings. However, the record developed upon consideration of Defendant's motion for summary judgment indicates that Plaintiffs have not established a *prima facie* case under § 3604(a), because they were not rejected as tenants at the inchoate stages of the rental transaction; indeed, they were accepted as tenants and their tenancy continued for more than six years. According to the Johns' own statements, Stillwell did not know the Johns were African-American when he rented the home to them. *See Mitchell v. Shane*, 350 F.3d 39, 49 (2d Cir. 2003) (lack of evidence that vendors had any knowledge of prospective African-American purchasers' racial background until after vendors had rejected purchasers' offer and signed contract with white purchaser precluded FHA racial discrimination claim against vendors). And the evidence in support of Plaintiffs' allegation that Stillwell remarked upon their race on or about the time that they took possession of the property, *i.e.*, approximate to the inchoate stages of the rental of the dwelling, makes clear that, assuming that Stillwell's comments or alleged discomfort (discussed further, *infra*, in the section addressing Plaintiffs' claims under § 3604(c) could be construed as evidence of racial discrimination,[7] Plaintiffs simply were not rejected as tenants.[8]

---

[7] As discussed further, *infra*, Mrs. Johns' deposition testimony that Stillwell appeared "uncomfortable" upon first meeting her and allegedly learning that she is black indicates that the allegation regarding this alleged exhibition of discomfiture is unsupported and conclusory. Unsubstantiated conclusory allegations are insufficient to avoid summary judgment. *Liberty Lobby*, 477 U.S. at 248-52. A nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, a nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover*, 178 F. Supp. 2d at 631. A trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty*, 818 F.2d at 1128 (quoting *Celotex*, 477 U.S. at 317).

[8] *Halprin II* observed that, although "[a]s a purely semantic matter the statutory language might be stretched far enough to reach a case of 'constructive eviction,'" alleged harassment did not violate provisions barring discrimination in the sale or rental of a dwelling because such provisions addressed the problem of "exclusion," not "expulsion." 388 F.3d at 329.

-10-

Even were the Court to construe § 3604(a) as applying not only to the incipient stages of a real estate transaction, but also to the termination of Plaintiffs' tenancy of at least six years, the record suggests that the property did not remain available thereafter on "similar" terms. *See Mobley*, 297 F. Supp. 2d at 839; *Pinchback*, 907 F.2d at 1451; *Selden*, 785 F.2d at 159. The record includes substantial and undisputed evidence indicating that, upon taking possession of the rental home, Stillwell did, in fact, set about making substantial and costly investments in renovating the home, as he had stated in his letter of March 9, 2005, as a reason for terminating the Johns' tenancy.[9]  Accordingly, summary judgment will be granted to Defendant as to Plaintiffs' claims under 42 U.S.C. § 3604(a).

### B.  *42 U.S.C. § 3604(b)*

The Fair Housing Act prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection therewith, because of race. . . ."  42 U.S.C. § 3604(b).  Discrimination in the conditions of housing, or in the provision of housing services, is actionable under § 3604(b). *Thompson v. U.S. Dept. of Housing and Urban Development*, 348 F. Supp. 2d 398, 416 (D. Md. 2005); *see also Campbell v. City of Berwyn*, 815 F. Supp. 1138, 1144 (N.D. Ill. 1993)

---

[9] Additionally, the record suggests that Plaintiffs had some difficulty making ends meet.  The deposition testimony of Barbara Potter Drinkwater, the real estate agent through whom Stillwell's property was rented to the Johns, indicates that she questioned the Johns' ability to pay the rent on the house at the time they rented it. Records from the Central Virginia Electric Cooperative ("CVEC") and deposition testimony from a CVEC representative indicate that the Johns were frequently in arrears on their electric bills.  It also appears that, in 2004, the Johns were in arrears with their rent, Stillwell had attempted to raise the rent from $900 to $1050, and Stillwell gave Plaintiffs notice that he intended to terminate their tenancy.  However, Plaintiffs were permitted to remain in the house, they were not evicted, and Stillwell abandoned his attempt to raise the rent until March 2005. The evidence suggests that the property is valuable and desirable.  The record indicates that the house is spacious -- indeed, the complaint states that the Johns "decided to rent the house because the house was large and had a nice yard" -- and deposition testimony includes references to various amenities, including a Jacuzzi and a "laserium" [sic].

-11-

(discriminatory termination of police protection prohibited by § 3604(b)); *but see Mackey v. Nationwide Ins. Companies*, 724 F.2d 419, 423 (4th Cir. 1984) (declining to apply § 3604(b) to defendant's insurance practices, noting the traditional predominance of state regulation of insurance and the principle that non-specific Congressional enactments should not displace such arrangements).

Plaintiffs contend that, after Stillwell met them for the first time and learned that they are African-American, he began to impose a series of conditions on their tenancy. Defendant's motion for summary judgment fails to directly controvert Plaintiffs' factual assertions that, after learning they are African-American, Stillwell discriminated against the Johns by instructing them that they were not allowed to have guests or family members over to visit.[10] Based on the record presently before the Court, a reasonable juror could find that Stillwell's actions were discriminatory in violation of § 3604(b)'s prohibition against discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling. . . ." Furthermore, there are factual disputes regarding Stillwell's entry upon and taking possession of the property, including assertions that similar situations with white tenants were handled differently, which a reasonable juror could conclude as discriminatory in violation of § 3604(b). Additionally, the Johns contend that Stillwell failed to respond to their complaints of harassment by neighbors and purported relatives of Stillwell. The evidence is questionable as to whether the Johns ever reported the alleged incidents of racial harassment to Stillwell, but it is not in dispute that (1) they never reported these incidents to law enforcement, and (2) that they cannot identify the

---

[10] There is evidence in the record that vaguely suggests that the Johns may have had boarders or foster children staying in the house. However, this evidence is unclear, and Defendant does not refer to it.

Case 3:07-cv-00063-NKM-BWC   Document 75   Filed 05/20/09   Page 12 of 25   Pageid#: 1452

alleged perpetrators of the harassment.[11]  However, the Johns maintain that they complained to Stillwell of hunting and poaching of fruit from trees on land quite near the house, and that, in response, Stillwell indicated that his family hunted the land with his permission.  According to Plaintiffs, Defendant refused to ameliorate this situation because they are black and he was "in harmony" with his family.

As already observed, it is questionable whether the Johns ever reported the racial harassment on the part of unidentified parties to Stillwell; however, Stillwell does not dispute that he granted permission to access the property or nearby neighboring land to hunters, and has not proffered a legitimate non-discriminatory reason for failing to address Plaintiffs' alleged complaints regarding the presence of hunters in close proximity to the house.[12]  A reasonable juror could find that Stillwell's omissions were sufficiently severe or pervasive enough to alter the conditions of Plaintiffs' tenancy and to create a hostile living environment in violation of § 3604(b).  *See Williams v. Poretsky Management, Inc.*, 955 F. Supp 490, 496 (D. Md. 1996) (citations omitted).

Although Defendant presents detailed and credible arguments in defense of many of Plaintiffs' factual assertions, often showing that many of the factual issues Plaintiffs have generated are not genuine and material, Defendant fails to sufficiently rebut the assertions that, after learning of Plaintiffs' race, he imposed conditions on their tenancy; that he failed to respond to complaints of hunters discharging firearms near the house; and that he dealt with the

---

[11] Significantly, Mr. Johns testified in deposition that he never experienced any of the alleged campaign of racial harassment and intimidation.  He states that he heard it all second hand.

[12] I note that, in addition to not calling upon law enforcement officers regarding hunters discharging firearms in close proximity to the house, Plaintiffs likewise did not call upon law enforcement when the windows of vehicles were allegedly shot out.

-13-

termination of the tenancy of a white person in accordance with state law preventing landlord self-help in evictions, but did not deal with Plaintiffs on similar terms. Indeed, based on the record before the Court, a reasonable juror could determine that, "because of race," and in violation of § 3604(b), Stillwell took possession of the rental property earlier than the parties' agreed-upon date, and then discarded and burned Plaintiffs' property.[13]

Defendant produces substantial evidence in support of his proffered legitimate non-discriminatory reason for terminating the tenancy, but that reason -- that he terminated the tenancy in order to undertake extensive and costly renovations on the house -- does not address Plaintiffs' claims under § 3604(b). And, while Defendant contends that he knew of Plaintiffs' race prior to first meeting them, he acknowledges that, for purposes of summary judgment, this is a factual dispute that must be viewed in the light most favorable to the Johns. Accordingly, Defendant's motion for summary judgment is denied as to Plaintiffs' claims under 42 U.S.C. § 3604(b).

### C.  42 U.S.C. § 3604(c)

Section 3604(c) of the Fair Housing Act makes it unlawful to make any statement with respect to the rental or sale of a dwelling that indicates any preference, limitation, or discrimination to any person on the basis of race or color. This prohibition applies to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling and includes, but is not limited to, words or phrases that convey that dwellings are available, or not available, to persons because of race or color and expressing to agents or renters a preference for,

---

[13] Defendant contends that he undertook two days' travel from Florida and entered and took possession of the property because he believed the Johns had abandoned the property. He states that he was unable to get in touch with the Johns by telephone and he learned from the power company that the service of electricity in the Johns' name had been, or was to be, discontinued. While the evidence tends to favor Defendant's claim as to the electricity, *i.e.*, that the Johns had ordered it disconnected, it is not conclusive.

-14-

limitation on, any renter because of race or color. 24 C.F.R. §§ 100.75(b), (c)(1)-(2). Courts apply an "ordinary listener" standard to determine if a statement expresses that a particular race or color is preferred or disfavored for the housing in question. *See White v. U.S. Dep't of Hous. & Urban Dev.*, 475 F.3d 898, 907 (7th Cir. 2007); *United States v. Hunter* ("*Hunter II*"), 459 F.2d 205, 215 (4th Cir. 1972) (applying ordinary reader standard to determine if advertisement published in newspaper violated § 3604(c)). Thus, a plaintiff in a § 3604(c) claim must show that (1) the defendant made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against the plaintiff on the basis of race or color. 42 U.S.C. § 3604(c); *White*, 475 F.3d at 904.

I observe first that, although the complaint alleges that "Stillwell regularly used racial epithets, swear words, and other derogatory terms when referring to the Johns as his tenants," the record reveals no evidence suggesting that Stillwell used harsh or offensive racially derogatory terms. In fact, Mrs. Johns' own deposition testimony affirmed that she never heard Stillwell use "racial terms that were offensive and derogatory and demonstrated that he disrespected . . . or disliked" her. Nor does the record reveal any evidence that he otherwise made a statement with respect to the rental of the dwelling indicating a preference, limitation, or discrimination against Plaintiffs on the basis of race or color in violation of § 3604(c).

The record reveals that, although Plaintiffs allege that they were verbally harassed with harsh or offensive racially derogatory terms by persons whom the Johns cannot identify but whom they allege were Stillwell's relatives, it is questionable whether Plaintiffs ever reported this to Stillwell. It is undisputed that Plaintiffs did not report any verbal harassment or the hunting in the yard to law enforcement. Mrs. Johns' deposition testimony states that she "called [Stillwell] one time and told him that they was coming in the yard. . . . And he told me that he

-15-

gave them permission to hunt in the yard." She also testified that she believed Stillwell's early entry upon the property was racially motivated "because as long as I've been living in that house, and I called him and told him how his family was -- what his -- what they were doing, he was in harmony with it." The following discussion ensued:

> [Counsel for Defendant:] Why do you say that?

> [Mrs. Johns:] He never told -- because whenever you tell me -- you could tell -- you told your family they can hunt on the land, okay, and you don't tell me anything else, you don't tell me, "Okay. I'm going to check that out and have them not be on the land, Ms. Johns, okay, as long as you're renting there." Okay. And I told you they were -- what they were doing and thing likes [sic] that. And I called a couple of times afterwards and told him. I got tired of calling. I never -- I stopped calling.

> [Counsel for Defendant:} Did Mr. Stillwell ever use racial terms with you that were in your hearing that were offensive and derogatory and demonstrated that he disrespected you or disliked you --

> [Mrs. Johns:] No.

> [Counsel for Defendant:] -- because of your race?

> [Mrs. Johns:] No.

> [Counsel for Defendant:] Okay.

> Mrs. Johns:] It's just that he was in harmony with his family. And to burn my stuff is a racially-motivated thing.

Assuming that this deposition testimony could support a conclusion that Stillwell knew that unidentified relatives of his had verbally harassed Plaintiffs, it does not support a conclusion that Stillwell made a statement with respect to the rental of the dwelling indicating a preference, limitation, or discrimination against Plaintiffs on the basis of race or color in violation of § 3604(c), or that he made any statement that indicated "an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

-16-

Plaintiffs allege that, prior to the first face-to-face meeting between Stillwell and the Johns in 1999, when the Johns moved to the house from the "trailer" or "double-wide" manufactured housing unit on the property where they had been living for two years, Mr. Stillwell did not know the Johns were African-American. The Johns rented the double-wide from Stillwell through the services of Barbara Potter Drinkwater, a real estate agent. Drinkwater's deposition testimony states that she was "pretty sure" that Stillwell met the Johns and "knew they were black" when they were living in the double-wide. When Mrs. Johns was asked why she believed Stillwell did not know she was African-American until she moved from the double-wide to the house, she stated:

> I don't *think* he knew, because on the phone, I get a lot of people they think I'm -- when I'm talking -- when I talk on the phone, they think I'm a white woman, okay.
>
> And when, like -- when his family saw me and they saw that I was black, they were appalled, okay. It's just, like, I don't know, I get -- the first impression you get, and you're just being stared at like, you know, I mean they just shocked that you're probably black, you know.
>
> * * *
>
> I never seen him in person. It was more -- I guess it was my voice accent. I never seen him in person. I dealt mostly with Barbara Potter [Drinkwater].

(Emphasis added.) Mrs. Johns added that Barbara Potter Drinkwater "never talked about Mr. Stillwell to me." Mrs. Johns stated that, at Stillwell's direction, she sent her rent payments directly to him. She repeated that she and Stillwell never saw one another, but that, "on the phone, I get from a lot of people they think I'm white, on the phone."

According to Plaintiffs, when Stillwell met them face-to-face for the first time and allegedly learned that they were African-American, Stillwell was "uncomfortable." Again, the

-17-

Johns do not allege that Stillwell ever used a racially derogatory term toward either of them.

When asked about the first time she met Stillwell, Mrs. Johns stated:

> It's a while ago. I don't really remember. I don't really remember when I saw him face-to-face. I don't know whether it was -- I don't really remember whether it was maybe a week or two after or maybe a day or two after. I don't remember too much.

* * *

> He just looked at me. He just -- he just -- I was hanging draperies and I was taking stuff off the truck, and he just -- just stared at me like, you know, startled, like, you know, so . . .

Mrs. Johns testified regarding the "uncomfortable" feeling Stillwell allegedly displayed:

> [Plaintiffs' counsel:] Mrs. Johns, you recall [Defendant's counsel] asking you questions about when you first met Mr. Stillwell?
>
> [Mrs. Johns:] Uh-huh.
>
> [Plaintiffs' counsel:] And I believe you testified that he appeared surprised.
>
> [Mrs. Johns:] Uh-huh. That I was black.
>
> [Plaintiffs' counsel:] Do you recall anything that he said around that time to make you think that he was surprised?
>
> [Mrs. Johns:] No. He just said -- he looked at me up on the ladder and he just looked and he said, "I didn't know. I didn't know."
>
> I said, "What, I'm black?" And he never answered.
>
> He said, "I thought -- I thought," like that.
>
> And I said, "What, I'm white? You thought I was white?" And he never answered.

Here, Mrs. Johns has filled in the blanks in Stillwell's alleged remarks with her own racial descriptions "black" and "white." However, even assuming Stillwell's silence indicates his intention or willingness to adopt such descriptors, and assuming Stillwell's alleged

-18-

discomfort and surprise at learning that the Johns' were black, the alleged remarks and discomfited behavior do not support a conclusion that Stillwell made a statement with respect to the rental of the dwelling indicating a preference, limitation, or discrimination against Plaintiffs on the basis of race or color in violation of § 3604(c), or that he made any statement that indicated "an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). For purposes of summary judgment, the allegation in the complaint that Stillwell "made it clear . . . that he was uncomfortable with the fact that the Johns are African American" is conclusory and unsupported.[14] Unsubstantiated conclusory allegations are insufficient to avoid summary judgment. *Liberty Lobby,* 477 U.S. at 248-52. A nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, a nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover,* 178 F. Supp. 2d at 631. A

---

[14] Mr. Johns' deposition testimony regarding statements allegedly made by Stillwell are similarly conclusory and unsupported by any evidence. Regarding Stillwell's alleged discomfort, Mrs. Johns' deposition testimony appears to generate a factual basis for the Johns' claim in paragraph 20 of the Complaint, which alleges:

> On or about February 15, 1999, Mrs. Johns and her son were moving into the house on Lindsay Road. Defendant Stillwell, for the first time, came to visit the Johns. He first asked Joshua Johns, who was outside helping his parents move into the house, where he could find Mrs. Johns. After Joshua directed him to the house, Stillwell entered the house and, not knowing who she was, asked Mrs. Johns where he could find Mrs. Johns. When she identified herself as Mrs. Johns, Mr. Stillwell made it clear that he was not aware until that moment that she was African American and that he was uncomfortable with the fact that the Johns are African American.

Additionally, the Johns assert that Barbara Potter Drinkwater's deposition testimony indicates that Stillwell used the words "those people" to refer to them. They ignore that Drinkwater testified that she could not "recall him using any epithets," and observing that "[h]e would say [']those people['] about a lot of people. He just generally was an angry man, that's what I felt." She added that she told Mrs. Johns, "Look, honey, he's mean to everybody." Drinkwater testified that, aside from an episode concerning a leaking roof (which apparently was repaired) and Mrs. Johns' concern about mold (whether the mold was related to the leaking roof is unclear), Mrs. Johns never expressed any dissatisfaction with the house or the neighborhood until October 2005, although Mrs. Johns did express some dissatisfaction with Stillwell prior to 2005 because "[s]he just felt he wasn't cooperating. He wasn't helping her with her dream."

-19-

trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty*, 818 F.2d at 1128 (quoting *Celotex*, 477 U.S. at 317).

Plaintiffs claim that Stillwell "addressed the Johns' adult children with racial slurs" and made "statements that indicate a racial preference to the ordinary listener with regard to renting property." Specifically, they contend that, on separate occasions, he referred to each of the Johns' sons as "boy."

The Johns' son Michael's deposition testimony recalled his brother Joshua's description of Stillwell having referred to Joshua as "boy" when he was helping his parents move in:

> Well, he made a comment -- my brother came down to help my mother out to get everything situated, because I had to work and I couldn't do it. And my brother met Stillwell, and he said, "Well, who's that boy?" And my brother is a grown man.

The alleged use of the term "boy" to describe the twenty-year-old Joshua (upon the occasion of Stillwell first meeting the Johns in 1999) may indeed be offensive to the racial sensibilities of many, particularity given that the speaker was a white landlord in his seventies; however, in context it relates not at all to the Johns renting the property, and it simply is not evidence of racial discrimination against the Johns during their tenancy of the property, which then continued for six-years and endured through at least one period in 2004 when the Johns were delinquent in their rent and were asked in writing to vacate the premises. In context, the term "boy" here simply is not evidence of discrimination. *See, e.g.*, *Hadeed v Abraham*, 265 F. Supp. 2d 614, 622 (E.D. Va. 2003), *aff'd* 103 Fed Appx 706 (4th Cir. 2004), *subsequent app* 161 Fed App'x 313 (4th Cir. 2006) (reference to plaintiff adult women as "'girls' may be distasteful, but it does not rise to the level of unlawful [gender] discrimination" in violation of FHA; defendants sold the property to other parties who offered more money than the plaintiffs had offered). The

-20-

use of the word "boy" in this context is insufficient to justify a conclusion that Stillwell made a statement with respect to the rental of the dwelling indicating a preference, limitation, or discrimination against Plaintiffs on the basis of race or color in violation of § 3604(c), or that he made any statement that indicated "an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

Plaintiffs contend also that Stillwell called Michael Johns "boy." As explained in a separate section, *infra*, the context of this use of the word is sufficient to support a claim under 42 U.S.C. § 3617; however, the evidence does not support a claim under § 3604(c). Mrs. Johns' deposition testimony indicates that, when the Johns returned from Philadelphia and discovered that their possessions had been removed from the house and placed on the lawn, the police were summoned, and Mrs. Johns telephoned her son, Michael, who came to assist her in removing some of the property from the premises. Mrs. Johns testified that, "[w]hen Michael pulled up. . . . the first thing he wanted to do was fight Mr. Stillwell." The police intervened, advising Michael, "Don't go fighting," that to fight would be "a criminal offense," and that the Johns should "[t]ake it to court." At some point in this confrontation, Stillwell warned Michael (a man forty years younger than Stillwell, and who was so angry that his mother asked him to leave), "Boy, you better get back in your van and off my land." The use of the word "boy" in this context is insufficient to justify a conclusion that Stillwell made a statement with respect to the rental of the dwelling indicating a preference, limitation, or discrimination against Mr. and Mrs. Johns on the basis of their race or color in violation of § 3604(c), or that he made any statement that indicated "an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c); *Hadeed*, 265 F. Supp. 2d at 622.

In sum, applying the ordinary listener standard to the evidence introduced in support of Plaintiffs' factual assertions indicates that Defendant did not make a statement with respect to the rental of the dwelling indicating a preference, limitation, or discrimination against Plaintiffs on the basis of race or color in violation of § 3604(c), nor that Defendant made a statement that indicated "an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). While the evidence of these factual assertions, considered *in toto*, may convince a reasonable juror that, "because of race," Defendant violated § 3604(b), the evidence indicates no affirmative conduct on Stillwell's part that could support a claim under § 3604(c). *See, e.g., U.S. on Behalf of Jackson v. Racey*, 112 F.3d 512 (Table) (4th Cir. 1997) (landlord stated to potential black tenant that she would not rent to blacks); *U.S. v. Hunter* ("*Hunter I*"), 324 F. Supp. 529, 532 (D. Md. 1971) ("[o]n its face, § 3604(c) applies to anyone who makes, prints or publishes, or causes to be made, printed or published any notice, statement or advertisement with respect to the rental of a dwelling[] indicating any of the preferences, limitations or discriminations listed in that section"); *Soules*, 967 F.2d at 824 (in determining whether advertisement or statement indicates impermissible racial discrimination under § 3604(c), court asks whether advertisement for housing suggests to ordinary reader or listener that particular race is preferred for housing in question); *Hunter II*, 459 F.2d at 215 (subsection (c) was intended to prevent newspapers from publishing classified advertisements indicating a racial or other statutorily proscribed preference in sale or rental of a dwelling); *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n* ("*Halprin I*"), 208 F. Supp. 2d 896, 902-03 (N.D. Ill. 2002) (plaintiffs failed to allege that any advertisement, statement, or symbol was made in the context of the sale or rental of plaintiffs' home, and defendants' alleged threat of forcing plaintiffs to sell their home did not indicate a policy, preference, limitation or discrimination with respect to the sale or rental of a home in

-22-

violation of § 3604(c)), *aff'd in part, rev'd in part, and remanded by Halprin II*, 388 F.3d 327, discussed *supra* (affirming that the alleged harassment did not violate § 3604).

Accordingly, Defendant's motion for summary judgment will be granted as to Plaintiffs' claims under 42 U.S.C. § 3604(c).

### D. 42 U.S.C. § 3617

Section 3617 provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." There are sufficient issues of fact to deny Defendant's motion as to Plaintiffs' claims under § 3617. In the first instance, it is not disputed that, when Michael Johns attempted to assist his mother in removing her property from the lawn, Stillwell warned him, "Boy, you better get back in your van and off my land,". A reasonable juror could conclude that such conduct indicates coercion, intimidation, the communication of a threat, or interference "on account of [Michael Johns] having aided or encouraged [Mrs. Johns] in the exercise or enjoyment of" her rights under § 3604(b).[15] 42 U.S.C. § 3617. Additionally, a reasonable juror could determine that Stillwell's entry upon and taking possession of the property in mid-June, and then discarding and burning Plaintiffs' property, indicates coercion, intimidation, threat, or

---

[15] Of course, a reasonable juror could conclude that Stillwell's comment was merely responsive to Michael Johns' intention to "fight" Stillwell, and not "on account of [Michael Johns] having aided or encouraged [Mrs. Johns] in the exercise or enjoyment of" her rights under § 3604(b).

Case 3:07-cv-00063-NKM-BWC   Document 75   Filed 05/20/09   Page 23 of 25   Pageid#: 1463

interference prohibited by § 3617.[16, 17]  Accordingly, Defendant's motion will be denied as to Plaintiffs' claim under 42 U.S.C. § 3617.

### E. State Law Claims

Defendant does not address Plaintiffs' state law claims, other than asserting that Plaintiffs' state law claims should be dismissed because the claims are "so entangled with the federal claim that rejection of [the] latter should entail rejection of [the] former as well." (Citation omitted.)  Referring to 28 U.S.C. § 1367, Defendant points out that this Court may dismiss the state law claims once it has dismissed all claims over which it has original jurisdiction.  Given that I am not dismissing all of the claims over which the Court has original jurisdiction, and that Defendant has not addressed Plaintiffs' state law claims, Defendant's motion will be denied as to Plaintiffs' state law claims.

### IV. CONCLUSION

As stated herein, Defendant's motion for summary judgment (docket no. 35) will be GRANTED, in part, and DENIED, in part.  Defendant's motion will be granted as to Plaintiffs' claims under 42 U.S.C. §§ 3604(a) & 3604(c), and will be denied as to Plaintiffs' claims under 42 U.S.C. §§ 3604(b) and 3617.  Additionally, Defendant's motion will be DENIED as to Plaintiffs' state law claims.

---

[16] The facts concerning Stillwell's entry upon and taking possession of the property, and whether he was warranted in doing so, are disputed, and will be resolved by a jury.  Additionally, whether Defendant was warranted in burning certain property will be resolved by a jury.  The Court makes no determination as to these disputes.

[17] Even if summary judgment were granted as to *all* of Plaintiffs' § 3604 claims, 24 C.F.R. § 100.400(c)(2) (in the name of § 3617 prohibiting "threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons") "cuts section 3617 loose from section 3604. . . ."  *Halprin II*, 388 F.3d at 330.

-24-

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 20th day of May, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE