CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 04 2009

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BETTY ANN JOHNS, ET AL.,<br><br>          *Plaintiffs,*<br><br>v.<br><br>EUGENE M. STILLWELL, JR., ET AL.,<br><br>          *Defendants.* | CIVIL ACTION NO. 3:07-CV-00063<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  At the conclusion of a four-day trial, the jury determined that Defendant Eugene M. Stillwell was liable to his former tenants, Plaintiffs Betty Ann and Tyrone Johns (the "Johns"), an African-American married couple, for their claims of conversion, trespass to chattels, trespass, and breach of contract. The jury awarded Plaintiffs $50,000.00 in punitive damages and $100,000.00 apiece in compensatory damages. Regarding Plaintiffs' racial discrimination claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA"), and Virginia law prohibiting vandalism against property motivated by race, the jury found that Defendant was not liable. The matter is now before me upon consideration of Defendant's motion (docket no. 113) for new trial or for remittitur, which has been fully briefed and is ripe for disposition.[1] For the reasons stated herein, I will deny Defendant's motion, and the Clerk will be directed to enter judgment for Plaintiffs.

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not significantly aid the decisional process.

# I.

In 1997, the Johns rented a trailer near Gordonsville in Louisa County, Virginia. The trailer was owned by Stillwell. The Johns did not rent the trailer from Stillwell directly, but instead dealt with a local real estate agent. In February 1999, Stillwell offered the Johns another rental property, a house located at 2767 Lindsay Road in Louisa County. The house had formerly been the residence of Stillwell's mother. The real estate agent dealt with the Johns and made the necessary arrangements. The Johns agreed to rent the house for $900.00 per month. The Johns moved into the house on or about February 15, 1999.

After attempts to raise the rent in 2004 and in the spring of 2005, Stillwell wrote a letter to the Johns, dated March 9, 2005, wherein he apparently intended to terminate the Johns' tenancy.[2] The letter states, in pertinent part: "I need you to please move **by June. June will be your last month.**" (Emphasis added.) At trial, Stillwell maintained that the words "by June" in the letter meant that the Johns were to be out of the house at the end of May, although the letter clearly states that "June [would] be [the Johns'] last month." In May 2005, the Johns moved some antique furniture out of the house, but by mid-June 2009, a significant amount (likely most) of the Johns' possessions remained in the house.

On June 9, 2005, the Johns left the house for the weekend to attend a funeral in Pennsylvania. While the Johns were gone, Stillwell (with enlisted help) entered the house and removed the Johns' belongings. The Johns returned to find themselves locked out of the house. The Johns' possessions had been removed from the house and placed upon the lawn, and "No Trespassing" notices had been posted on the house. Law enforcement was summonsed to the

---

[2] The rent apparently was raised, at some point, to $1,050.00 per month.

property to maintain peace, but were unable to assist the Johns in recovering possession of the house. The Johns were unable to arrange for the collection and removal of most of the possessions within the limited time Stillwell allotted to them, and within relatively short order Stillwell filled several Dumpsters with the items he had removed from the house -- including some few of his mother's possessions that had been stored in the basement of the house -- and had them carted away. He also burned some of the items removed from the house, and the photographic evidence introduced at trial indicates that a substantial amount of goods and possessions were destroyed by fire. The Johns lost possessions including Mr. Johns' medicine, clothes, jewelry, appliances, furniture, important documents such as birth certificates and financial records, family photographs, and other items of sentimental value.

Prior to trial, Defendant submitted the following proposed jury instruction:

**Defendant's Proposed Jury Instruction No. 30**

### GENERAL PERSONAL INJURY AND PROPERTY DAMAGE

If you find your verdict for the plaintiffs, then in determining the damages to which they are entitled, you shall consider any of the following which you believe by the greater weight of the evidence was caused by the actions of the defendant:

(1) *Any associated humiliation or embarrassment*

(2) Any property damage they sustained.

Your verdict shall be for such sum as will fully and fairly compensate the plaintiffs for the damages sustained.

(Italicized emphasis added.)

Ultimately, the parties submitted the following stipulated instruction regarding compensatory damages for the state law claims, and I so instructed the jury (with minor stylistic changes):

**Instruction No. 15**

## COMPENSATORY DAMAGES – VIRGINIA LAW CLAIMS

I will now instruct you on the law on damages under the Virginia state law claims of conversion, trespass to chattels, trespass, vandalism against property motivated by race, and breach of contract. As with the Fair Housing Act, if you find that the defendant is liable to the plaintiffs for violating state law, then you must determine an amount that is fair compensation for the plaintiffs' damages arising from these state law violations. Again, the purpose of these compensatory damages is to make the plaintiffs whole—that is, to compensate plaintiffs for the damage that they have suffered.

Different categories of compensatory damages are available for different types of unlawful conduct. I will now explain to you the types of damages that are available for each claim.

If you find that the defendant committed trespass to chattels, *then you must compensate the plaintiffs for the loss of use of the item(s)*.

If you find that the defendant committed conversion, *then you must compensate the plaintiffs for the value of the property the defendant converted*. The value must be determined as the value at the time and place of the conversion.

If you find that the defendant violated the Virginia law against vandalism against property motivated by race, then you must compensate Plaintiffs for the harm they suffered as a result.

If you find that the defendant is liable to the plaintiffs for breach of contract, then you must decide the amount of money that will reasonably and fairly compensate the plaintiffs for the damages that resulted naturally and directly from the breach of contract. The damages you award for breach of contract should be equal to the amount of money that would put the plaintiffs in the position they would have been if the defendant had not breached the contract.

If you find that the defendant committed trespass, then you can award the plaintiffs damages for any actual damage from the trespass. *If you find that the defendant's trespass was deliberate and accompanied by aggravating circumstances, then you may compensate the plaintiffs for any emotional distress they suffered as a result, even if the plaintiffs did not suffer a physical injury.*

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.

-4-

On the other hand, *the law does not require that plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.* You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

*If you award damages for emotional distress, it is important to remember that you are not determining value, but you should award an amount that will fairly compensate the plaintiffs for their injuries.*

The same conduct of the defendant may violate more than one of these laws. However, you may only make a single award of damages for each specific loss, and you may not double a single award for the same property damage or the same breach of contract because there are two plaintiffs. *Each of the plaintiffs may recover separately for their own emotional distress.*

(Italicized emphasis added.)

The parties also submitted a stipulated verdict form, which I submitted to the jury. The jury returned the following verdict (the jury foreperson's handwritten entries are bracketed):

    1.    Do you find that the defendant violated the Fair Housing Act in one or more of the following ways:

    A.    By coercing, intimidating, threatening, and/or interfering with the exercise or enjoyment of rental housing, or on account of enjoyment of rental housing, on the basis of race and/or color; or

    B.    By discriminating against any person in the terms, conditions, or privileges of rental of housing, or in the provision or services or facilities in connection with the rental of housing because of race and/or color.

Yes _____
No \_\_[✓]_____

2.    Do you find that the defendant committed conversion?

Yes \_\_[✓]_____
No _____

3.    Do you find that the defendant committed trespass to chattels?

Yes __[✓]_____
No _____

4. Do you find that the defendant committed trespass?

Yes __[✓]_____
No _____

5. Do you find that the defendant violated Virginia law prohibiting vandalism against property motivated by race?

Yes _____
No __[✓]_____

6. Do you find that the defendant violated the law against breach of contract?

Yes __[✓]_____
No _____

7. If you answered "yes" to any of the questions above, please assign an amount of compensatory damages to each of the plaintiffs:

Plaintiff Betty Ann Johns __[$100,000]_____

Plaintiff Tyrone Johns __[$100,000]__

The verdict form also indicated that, because the jury had "answered 'yes' to 1, 4, or 5 above," the jury found punitive damages against the defendant. The jury awarded $50,000 in punitive damages.

## II.

Defendant's motion contends that "[t]he jury's award of damages verdict was excessive" because it was "a product of the jury's passion over the Plaintiffs' emotional distress arising from non-compensable losses." Defendant describes Plaintiffs' distress as "includ[ing] significant elements of grief and anxiety over having been discriminated against, something that the jury found did not occur, and for their losses of chattels. . . ." According to Defendant, "the magnitude of the jury's verdict supports a new trial on the issue of damages. . . . because

-6-

substantially all of the Plaintiff's compensatory damages can be attributed to emotional distress," and the evidence presented to the jury regarding Plaintiffs' emotional distress was "so tainted by the Plaintiffs' belief that they had been discriminated against and for their chattel losses, [sic] that no valuation of their distress could avoid being based upon improper considerations resulting in passion and prejudice [sic]."

Defendant asserts that Plaintiffs "introduced no evidence whatsoever concerning the value of their property." In Defendant's view, the photographs of Plaintiffs' belongings introduced at trial "showed a variety of used articles and furniture, which the jury could have valued at a few hundred or, perhaps even a few thousand dollars." Regarding Plaintiffs' "allegations of lost photographs and/or memorabilia," Defendant contends that the "descriptions of such items . . . were too vague" in terms of quantity. Defendant further contends that "the counts for trespass to chattels, conversion and breach of contract clearly did not support claims for emotional distress as correctly articulated in the jury instructions," and "much of the Johns' emotional distress was driven by their personal property losses." Defendant maintains that, absent emotional distress damages, the trespass to chattels, conversion, and contract claims "could not generate more than modest damages," which "could not have been duplicative of one another" and "could not be double-counted for each of the Plaintiffs."

In Defendant's view, "the only count that could have supported any award of over a few thousand dollars was for the trespass count." Defendant proposes that "Plaintiffs' combined property damages should not have been much over $10,000," and that the value of the contract count could have "included damages for the loss of the use of the tenancy premises for June, but those such contract damages would not exceed one month's rental of $1050." According to Defendant, "the only way the jury could have awarded $100,000 in compensatory damages to

-7-

Case 3:07-cv-00063-NKM-BWC   Document 120   Filed 08/04/09   Page 7 of 16   Pageid#: 1977

both of the Plaintiffs for a total award of $200,000 was to award combined compensatory damages largely attributable to emotional distress." Defendant adds that "the award of compensatory damages could only compensate the Johns for the distress they suffered to a trespass to their real property, not the aggravating circumstances themselves," because "[t]he jury awarded punitive damages of $50,000 to compensate the plaintiffs for any actions they found to be 'maliciously' or 'wantonly' or 'oppressively' done," but that "[t]he aggravating circumstances associated with the trespass count were only a trigger for emotional damages, not a basis for punishing the defendant."

Defendant contends that "a principal basis for much of the emotional distress avowedly suffered by the plaintiffs" is removed because "the jury declined to find any racial discrimination." In Defendant's view, "there is no way that this improper contributing factor to the Plaintiffs' emotional distress evidence (or distress over the loss of chattels) can be disentangled from proper elements of emotional distress such as anxiety and grief over their rental property." Defendant maintains that "the integration of emotional distress due to discrimination as clearly articulated by the plaintiffs was problematic because of the passion that it tended to generate in the plaintiffs' testimony."

### III.

Upon consideration of a motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a), a district court may set aside the jury's verdict and grant a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lovell v. BBNT Solutions, LLC*, 295 F. Supp. 2d 611, 618 (E.D. Va. 2003) (citing *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*,

99 F.3d 587, 594 (4th Cir. 1996)). The grant or denial of a motion for a new trial is entrusted to the sound discretion of the district court. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998).

On a motion for a new trial addressing compensatory damages, the trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false. *Knussman v. Maryland*, 272 F.3d 625, 647 (4th Cir. 2001). When considering a state law claim, the district court "must apply state law standards to determine whether a verdict is excessive." *Steinke v. Beach Bungee, Inc.*, 105 F.3d 192, 197 (4th Cir. 1997). Virginia law clearly provides that the

> [c]ircumstances which compel setting aside a jury verdict include a damage award that is so excessive that it shocks the conscience of the court, creating the impression that the jury was influenced by passion, corruption or prejudice; that the jury has misconceived or misunderstood the facts or the law; or the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision.

*Poulston v. Rock*, 467 S.E.2d 479, 481 (Va. 1996). The decision as to whether damages are excessive is "entrusted to the sound discretion of the district court." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 271 (4th Cir. 2002).

"Remittitur, which is used in connection with Fed. R. Civ. P. 59(a), is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award." *Cline*, 144 F.3d at 305 (internal quotation marks omitted). "There is no specific provision for remittitur under the Federal Rules of Civil Procedure, but it is well established that a remittitur should be ordered when a jury award will result in a miscarriage of justice." *Bennett v. Fairfax County*, 432 F. Supp. 2d 596, 599 (E.D. Va. 2006) (citing *Cline*, 144 F.3d at 305).

Case 3:07-cv-00063-NKM-BWC   Document 120   Filed 08/04/09   Page 9 of 16   Pageid#: 1979

## IV.

In evaluating a motion for new trial or remittitur, I must view the evidence in the light most favorable to the prevailing party. *Hughston v. New Home Media*, 552 F. Supp. 2d 559, 565 (E.D. Va. 2008); *Baldwin v. McConnell*, 643 S.E.2d 703, 705 (Va. 2007). The evidence introduced at trial supports the jury's verdict. Assuming *arguendo* that Plaintiffs' trespass to chattels, conversion, and contract claims are worth no more than Defendant claims, $10,000.00, or substantially less, I find that compensatory damages of $95,000.00 apiece for emotional distress under Plaintiffs' trespass claims is not excessive.

However, leaving aside for a moment the matter of damages for the Johns' emotional distress under their trespass claims, plenty of evidence was introduced at trial to support a substantial award of damages for the trespass to chattels and conversion claims. Contrary to Defendant's assertion, in his reply to Plaintiff's opposition, that "the sum total of the Plaintiffs personal property damage can hardly amount to more than a typical yard sale," I observe that it is clear that several Dumpsters of property were carted away and that the photographs indicated quite large, not small, piles of burnt rubble remaining after Defendant burned Plaintiffs' property, indicating that a large quantity of items had been burned.[3] Multiple witnesses testified

---

[3] I note that Defendant's entry upon the property and removing and destroying Plaintiffs' belongings precluded Plaintiffs from resorting to a yard sale. It would be perverse to find that Plaintiffs should be deprived from recovering for their losses on the ground that calculating their damages requires some estimation, when Defendant is at least partly responsible for their difficulties in documenting their losses. "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *See Alco Standard Corp. v. Bretner*, 891 F.2d 286 (4th Cir. 1989); *see also In re Starke*, No. 79-00971, 1980 WL 246161 at *5 (E.D. Va. 1980) (recognizing the "inverse relationship between the degree of certainty required and the degree to which a party's wrongdoing infects more certain means of proof" and finding that "one bears the brunt of one's own wrongdoing, here the risk of imprecise proof"). The Supreme Court has similarly held that "whatever uncertainty there may be in this mode of estimating damages is an uncertainty caused by the Defendants' own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced." *Story Parchment Co. v. Paterson Parchment Paper Co.*,
(continued...)

Case 3:07-cv-00063-NKM-BWC Document 120 Filed 08/04/09 Page 10 of 16 Pageid#: 1980

regarding the sheer volume of Plaintiffs' property that was discarded and destroyed by fire, and Mrs. Johns meticulously recounted, room by room, the furniture she lost. Additionally, medications, clothing, jewelry, personal items, computer equipment, and other home furnishings were removed and destroyed, and the weight of the testimony and other evidence supports a conclusion that the Johns lost nearly their entire household of possessions. In any event, the question of valuation was for the jury to decide under the agreed instructions.

Remittitur is improper where, as here, the jury awards a single undifferentiated sum of damages for multiple compensable legal violations and there is no specific, identifiable amount of damages that was erroneously included in the award. As the United States Court of Appeals for the Fourth Circuit has explained, remittitur may not be used over a party's objection to remedy an error "unless the amount of the award traceable to that error can be at least closely approximated or capped by a maximum figure through resort to the trial record." *Arnold v. Eastern Airlines, Inc.*, 681 F.2d 186, 206 (4th Cir. 1982). In circumstances where, as here, there is a lump sum undifferentiated damage award, remittitur would necessarily involve "judicial correction of a jury's verdict by a process of determining an unknown fraction of an unknown portion of an unknown whole" and is therefore improper. *Arnold*, 681 F. 2d at 206 (internal quotations omitted); *see also Alliance for Telecommunications Industry Solutions, Inc. v. Hall*, Civil Action No. 1:05-cv-00440, 2007 WL 3224589 (D. Md. Sept. 27, 2007) (finding remittitur improper in light of the prohibition on arbitrarily reducing damages awards since the verdict form did not identify the specific damages awarded for each cause of action).

---

[3](...continued)
282 U.S. 555, 565 (1931).

The jury provided one lump sum award to compensate each Plaintiff for the harms, including emotional distress, caused by Defendant's four state law violations; accordingly, the only way I could conclude that the award is excessive would require that I find that, assuming Plaintiffs' property losses were worth only $10,000.00, as Defendant claims, Plaintiffs' emotional distress could not possibly be worth $95,000.00 each, and that the award thus "shocks the conscience." Even though the damages awarded may be more than I would award, I find that the jury's award is not excessive. Courts applying the controlling legal standard for challenges to damages under Virginia law have upheld far more substantial compensatory damages awards for arguably less egregious conduct. *See, e.g., Baldwin*, 643 S.E.2d at 706 (holding that the trial court abused its discretion in ordering remittitur of jury's $240,000 compensatory damages award for the torts of assault and battery based on a workplace altercation in which the plaintiff was simply shoved; award was reduced to $100,000 pursuant to *ad damnum* clause, but the trial court further remitted it to $1,000); *Government Micro Resources, Inc. v. Jackson*, 624 S.E.2d 63, 74 (Va. 2006) (reversing the trial court's order of remittitur and holding that a jury's award of $5 million in compensatory damages stemming from an executive's defamatory statement that the plaintiff was responsible for the company's financial losses was not excessive).

As a matter of law, trespass damages include compensation for the emotional injuries caused by Defendant's destructive acts as a trespasser, including the anguish incurred by the burning of Plaintiffs' property, the anxiety of being rendered homeless and completely dispossessed of an entire household, and the powerlessness and embarrassment that Defendant wrongfully and publicly inflicted on Plaintiffs. As the Restatement (Second) of Torts explains: "A wantonly dispossesses B of household furniture to the knowledge of B's neighbors. B is entitled to damages for humiliation." *Id.*, § 905, Comment d, Illustration 5. Witnesses at trial

testified to the public spectacle created by Defendant piling Plaintiffs' personal belongings and furniture on the lawn of the property, and the further spectacle created by the burning of such possessions. An additional Illustration to the Restatement states:

> A tortiously and wantonly evicts B and his family from his home. B spends several hours worrying about the securing of shelter for himself and family. In an action for trespass to land or battery upon his person, B is entitled to have this fact considered as an element of damage.

*Id.*, § 905, Comment e, Illustration 8. Significantly, the Fourth Circuit has specifically noted these two Illustrations from the Restatement as indicative of circumstances warranting damages for emotional distress. *See Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224, 1229-30 n.4 (4th Cir. 1976).

Here, both Plaintiffs testified that they experienced deep anxiety and feelings of helplessness because they had no place to go, because they were unable to collect their belongings, and because they were powerless to prevent Defendant from his actions. Mr. Johns tearfully recounted feeling like "less than a man" because he felt he was supposed to protect his wife and his household, but upon seeing that Defendant had seized the property, and that his own possessions had been piled outside, he could only stand by and cry, because he was physically unable to eject Defendant or collect, or even protect, his own belongings. Mrs. Johns similarly testified to crying and being very distraught and upset at seeing Defendant on the property and her belongings in the yard. She called the sight "devastating" and described waiting for the police while persons employed by Defendant continued to pile her possessions in the yard. Both parties testified regarding the anxiety of being rendered essentially homeless and unilaterally shed of their personal effects. Thus, it is clear to me that the jury's compensatory damages

award is supported by evidence indicating that both Plaintiffs suffered mental distress caused by Defendant's trespass.[4, 5]

The law provides that the jury is entitled to compensate Plaintiffs for the injuries caused by Defendant's actions as a trespasser. To the extent that the egregiousness of Defendant's trespass increased Plaintiffs' mental distress, these circumstances are properly considered by the jury as part of the jury's award of compensatory damages. The jury's award of punitive damages is entirely separate from the compensatory damages award and in no way precludes the jury from making Plaintiffs whole, through compensatory damages, for the injuries they sustained on account of Defendant's tortious conduct. Punitive damages serve an entirely different purpose than compensatory damages. *See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) ("Although compensatory damages and punitive damages are typically awarded at the same time by the same decisionmaker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. The latter, which have been described as 'quasi-criminal'

---

[4] Defendant's behavior as a trespasser can fairly be described as egregious. In addition to other conduct already recounted, he also made false accusations about Plaintiffs to the police and refused to permit Plaintiffs to enter the property unescorted.

[5] *See also Pricer v. Butler*, Civil Action No. 1:07cv00118, 2007 WL 2688417 (E.D. Va. Sept. 12, 2007) (stating that the plaintiff's allegation that the defendant's trespass caused her to fear for her safety and for the protection of her personal property provided "sufficient evidentiary support that she has sustained damages of at least $75,000"). Other courts have similarly held that a trespasser is liable for the emotional harm caused by the trespass, including the surrounding circumstances and any actions taken during the trespass. A plaintiff who is evicted from his home and whose "household goods and other property [are put] into the highway," is "entitled to compensation for any bodily or mental anguish or suffering, for injury to his pride and social position and for the sense of shame and humiliation at having his wife and family turned out of their home into the public street." *Moyer v. Gordon*, 14 N.E. 476, 477-79 (Ind. 1887). Other courts have similarly affirmed the compensability of such emotional injuries flowing from a defendant's trespass. *See, e.g., Mest v. Cabot Corp.*, 449 F.3d 502, 519 (3d Cir. 2006) (holding that emotional distress based on the plaintiffs' concern for the health of their cows is compensable as part of the damages flowing from the defendant's trespass); *Hammond v. County of Madera*, 859 F.2d 797, 804-05 (9th Cir. 1988) (holding that a trespasser's liability for all injuries proximately flowing from the trespass includes any mental distress and consequential damages).

operate as 'private fines' intended to punish the defendant and deter future wrongdoing") (internal citations omitted).

Finally, I am not persuaded by Defendant's argument that the jury's award of compensatory damages was impermissibly based on Plaintiffs' claims of emotional distress regarding their allegations of racial discrimination. Given the jury's total rejection of Plaintiffs' FHA and Virginia race discrimination claims, it is clear the jury drew a distinction between the state law claims upon which its award was based, and the race-based claims, which it rejected.[6] Just because Plaintiffs lost their race-based claims does not mean that they were not entitled in good faith to bring those claims to court, and there is no logical basis for Defendant's assertion that the jury awarded emotional distress damages for claims that it rejected. There is no reason to assume that the jury acted illogically, ignored my instructions, or misapplied the law. As the Fourth Circuit has explained, it is not appropriate to "denigrate a jury" by simply assuming that it ignored instructions; "instead, we must presume on this record both that the jury understood and was faithful to its general mandate and that it was responsive to the specific cautionary instructions." *Arnold*, 681 F.2d at 204. There is no evidence suggesting that the jury disregarded instructions or otherwise failed to properly carry out its duty. Crediting Defendant's argument would necessarily require me to find that the jury illogically awarded emotional damages for discrimination that it determined that Plaintiffs had failed to prove. The evidence

---

[6] I note, however, that a defendant takes a plaintiff as he finds him. *See, e.g., Vaughn v. Nissan Motor Corp. in U.S.A., Inc.*, 77 F.3d 736, 738 (4th Cir. 1996). Defendant is responsible for the emotional damage he caused. Different people, with different sensitivities, respond emotionally in different ways. Poor, powerless people may become depressed over conduct to which a rich, powerful person might respond with anger, or in kind. Under the circumstances of this case, a poor black person may feel powerless and become depressed; if so, that is emotional damage. Regardless of whether Plaintiffs are African-American or white, Defendant is not entitled to treat them badly in violation of the law, but even had there been no race-based claims, the fact that Plaintiffs are African-American would have remained obvious to the jury.

Case 3:07-cv-00063-NKM-BWC Document 120 Filed 08/04/09 Page 15 of 16 Pageid#: 1985

supports a conclusion that the jury awarded compensatory damages to reasonably compensate Plaintiffs for injuries, emotional and otherwise, which they suffered on account of Defendant's egregious acts as a trespasser, the destruction of their personal effects, the losses stemming from Defendant's contractual breach, and nothing more.

V.

For the heretofore stated reasons, Defendant's motion (docket no. 113) for new trial or for remittitur will be denied. The Clerk of the Court will be directed to enter judgment for Plaintiffs in accordance with the verdict returned by the jury on May 29, 2009.

The Clerk will be further directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 4th day of August, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE